UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CLEMENT BROWN, | ) | 1:10−cv−01910-OWW-SKO-HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATIONS TO |
| | ) | DISMISS THE PETITION WITHOUT |
| | ) | LEAVE TO AMEND (DOC. 1), DECLINE |
| v. | ) | TO ISSUE A CERTIFICATE OF |
| | ) | APPEALABILITY, AND DIRECT THE |
| KEN CLARK, Warden, | ) | CLERK TO CLOSE THE CASE |
| | ) | |
| Respondent. | ) | **OBJECTIONS DEADLINE:  THIRTY (30)** |
| | ) | **DAYS** |
| | ) | |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304.  Pending before the Court is the petition, which was filed on October 13, 2010.  Respondent answered the petition on February 15, 2011.  Petitioner did not file a traverse.

I.  <u>Jurisdiction</u>

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA), the AEDPA applies in this proceeding.  Lindh v. Murphy, 521 U.S. 320, 327 (1997), cert. denied, 522 U.S. 1008 (1997); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999).

A district court may entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. §§ 2254(a), 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. –, –, 131 S.Ct. 13, 16 (2010) (per curiam).

Petitioner alleges that he was an inmate of the California Substance Abuse Treatment Facility and State Prison at Corcoran, California (CSATF), serving a sentence of twenty-six (26) years to life imposed by the Orange County Superior Court after Petitioner was convicted of first degree murder in October 1985. (Pet. 1.)  Petitioner claims that he suffered violations of his constitutional rights when he was found unsuitable for parole by the California Board of Parole Hearings (BPH) after a hearing held on January 12, 2010, at the CSATF.  (Pet. 5)  Thus, violations of the Constitution are alleged.  Further, the decision challenged was made at Corcoran, California, which is located within the jurisdiction of this Court.  28 U.S.C. §§ 2254(a), 2241(a), (d).

Respondent Ken Clark answered the petition.  (Doc. 12, 1.) Petitioner thus named as a respondent a person who had custody of the Petitioner within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section 2254 Cases in the District Courts (Habeas Rules).  See, Stanley v. California Supreme Court,

1  21 F.3d 359, 360 (9th Cir. 1994).

2      Accordingly, the Court concludes that it has jurisdiction

3  over the proceeding and over the Respondent.

4      II.  Failure to Allege a Cognizable Due Process Claim

5          A.  Background

6      Petitioner alleges that his right to due process of law

7  guaranteed by the Fourteenth Amendment was violated by the BPH's

8  decision finding him unsuitable for parole for three years

9  because the decision was not supported by some evidence of

10 dangerousness.  Petitioner argues that the BPH's reliance on the

11 commitment offense and Petitioner's disciplinary history in

12 prison to support the finding that Petitioner presented a danger

13 if released failed to comply with California case law requiring

14 an explicit articulation of a rational nexus between the evidence

15 and the finding of dangerousness.  Petitioner argues that his

16 exemplary conduct in prison, favorable psychiatric

17 recommendation, and comprehensive parole plans demonstrated that

18 he was no longer dangerous and merited a grant of parole. (Pet.

19 5-17.)

20     The transcript of the hearing held on January 12, 2010,

21 reflects that Petitioner was present at the parole hearing (pet.

22 21, 24, 21-110), received records before the hearing and was

23 given an opportunity to correct or clarify the record (pet. 26,

24 28), testified under oath concerning numerous factors of parole

25 suitability (pet. 30-87), and made a statement to the BPH in

26 favor of parole (pet. 95-97).  An attorney for Petitioner

27 appeared at the hearing, advocated on Petitioner's behalf, and

28 made a closing statement in favor of finding Petitioner suitable

3

1   for parole.  (Pet. 24, 27-30, 89-94.)

2       Further, Petitioner was present when the commissioners

3   stated the reasons for the BPH's denial of parole for three

4   years, which included the nature and circumstances of the

5   commitment offense, Petitioner's disciplinary history in prison,

6   prior criminality, drug and alcohol use, unstable social history,

7   age, and the prosecutor's opposition to release.  (Pet. 99-110.)

8           B.  <u>Analysis</u>

9       The Supreme Court has characterized as reasonable the

10  decision of the Court of Appeals for the Ninth Circuit that

11  California law creates a liberty interest in parole protected by

12  the Fourteenth Amendment Due Process Clause, which in turn

13  requires fair procedures with respect to the liberty interest.

14  <u>Swarthout v. Cooke</u>, 562 U.S. –, 131 S.Ct. 859, 861-62 (2011).

15      However, the procedures required for a parole determination

16  are the minimal requirements set forth in <u>Greenholtz v. Inmates</u>

17  <u>of Neb. Penal and Correctional Complex</u>, 442 U.S. 1, 12 (1979).[1]

18  <u>Swarthout v. Cooke</u>, 131 S.Ct. 859, 862.  In <u>Swarthout</u>, the Court

19  rejected inmates' claims that they were denied a liberty interest

20

21      [1] In <u>Greenholtz</u>, the Court held that a formal hearing is not required
    with respect to a decision concerning granting or denying discretionary
    parole; it is sufficient to permit the inmate to have an opportunity to be
22  heard and to be given a statement of reasons for the decision made.  <u>Id.</u> at
    16.  The decision maker is not required to state the evidence relied upon in
23  coming to the decision.  <u>Id.</u> at 15-16.  The Court reasoned that because there
    is no constitutional or inherent right of a convicted person to be released
24  conditionally before expiration of a valid sentence, the liberty interest in
    discretionary parole is only conditional and thus differs from the liberty
25  interest of a parolee.  <u>Id.</u> at 9.  Further, the discretionary decision to
    release one on parole does not involve restrospective factual determinations,
26  as in disciplinary proceedings in prison; instead, it is generally more
    discretionary and predictive, and thus procedures designed to elicit specific
27  facts are unnecessary.  <u>Id.</u> at 13.  In <u>Greenholtz</u>, the Court held that due
    process was satisfied where the inmate received a statement of reasons for the
    decision and had an effective opportunity to insure that the records being
28  considered were his records, and to present any special considerations
    demonstrating why he was an appropriate candidate for parole.  <u>Id.</u> at 15.

4

because there was an absence of "some evidence" to support the
decision to deny parole.  The Court stated:

> There is no right under the Federal Constitution
> to be conditionally released before the expiration of
> a valid sentence, and the States are under no duty
> to offer parole to their prisoners.  (Citation omitted.)
> When, however, a State creates a liberty interest,
> the Due Process Clause requires fair procedures for its
> vindication–and federal courts will review the
> application of those constitutionally required procedures.
> In the context of parole, we have held that the procedures
> required are minimal.  In <u>Greenholtz</u>, we found
> that a prisoner subject to a parole statute similar
> to California's received adequate process when he
> was allowed an opportunity to be heard and was provided
> a statement of the reasons why parole was denied.
> (Citation omitted.)

<u>Swarthout</u>, 131 S.Ct. 859, 862.  The Court concluded that the
petitioners had received the process that was due:

> They were allowed to speak at their parole hearings
> and to contest the evidence against them, were afforded
> access to their records in advance, and were notified
> as to the reasons why parole was denied....
>
> That should have been the beginning and the end of
> the federal habeas courts' inquiry into whether
> [the petitioners] received due process.

<u>Swarthout</u>, 131 S.Ct. at 862.  The Court in <u>Swarthout</u> expressly
noted that California's "some evidence" rule is not a substantive
federal requirement, and correct application of California's
"some evidence" standard is not required by the federal Due
Process Clause.  <u>Id.</u> at 862-63.

    Petitioner asks this Court to evaluate the BPH's application
of California's "some evidence" rule.  Thus, Petitioner asks this
Court to engage in the very type of analysis foreclosed by
<u>Swarthout</u>.  Petitioner does not state facts that point to a real
possibility of constitutional error or that otherwise would
entitle Petitioner to habeas relief because California's "some

evidence" requirement is not a substantive federal requirement.
Review of the record for "some evidence" to support the denial of
parole is not within the scope of this Court's habeas review
under 28 U.S.C. § 2254.  Consideration of Petitioner's more
specific points concerning the suitability factors in his case
would amount to undertaking the very analysis disapproved by the
Court in Swarthout.

Petitioner cites state law concerning the parole process and
the appropriate weight to be given to evidence.  To the extent
that Petitioner's claim or claims rest on state law, they are not
cognizable on federal habeas corpus.  Federal habeas relief is
not available to retry a state issue that does not rise to the
level of a federal constitutional violation.  Wilson v. Corcoran,
562 U.S. — , 131 S.Ct. 13, 16 (2010); Estelle v. McGuire, 502
U.S. 62, 67-68 (1991).  Alleged errors in the application of
state law are not cognizable in federal habeas corpus.  Souch v.
Schiavo, 289 F.3d 616, 623 (9th Cir. 2002).  The Court concludes
that Petitioner's due process claim concerning the evidence must
be dismissed.

A petition for habeas corpus should not be dismissed without
leave to amend unless it appears that no tenable claim for relief
can be pleaded were such leave granted.  Jarvis v. Nelson, 440
F.2d 13, 14 (9th Cir. 1971).

It appears from the attachments to Petitioner's petition
that Petitioner had an opportunity to review in advance and
contest the evidence against him, and had a chance to speak at
the hearing.  Further, Petitioner received a statement of the
reasons for the decision.  There is a clear documentary showing

6

1  that Petitioner received all process that was due under the
2  circumstances.

3      The Court, therefore, concludes that Petitioner could not
4  state facts constituting a cognizable due process claim in
5  connection with the denial of his parole.  Accordingly, it will
6  be recommended that Petitioner's due process claim be dismissed
7  without leave to amend.

8      III.  <u>Ex Post Facto Claim</u>

9      Petitioner argues that the BPH's application of California's
10  Proposition 9 (Marsy's Law) to Petitioner, whose crime was
11  committed before the proposition took effect, was a violation of
12  the Ex Post Facto Clause and the Due Process Clause.  Petitioner
13  asserts that application of Proposition 9 created a significant
14  risk of prolonging his incarceration because he received a three-
15  year denial instead of the two-year denial he had received at a
16  prior parole hearing; further, the risk was not ameliorated by
17  the availability of an advanced hearing upon a change in
18  circumstances or new information.  Petitioner asserts that when
19  an inmate is found suitable for parole and the BPH sets the term
20  for the commitment offense, the inmate has already served several
21  years to a decade or more beyond the term that is set.  Thus,
22  extended deferrals of parole allowed by Proposition 9 will
23  undoubtedly result in longer period of incarceration and in
24  inmates serving many years beyond the terms set by the BPH.
25  Thus, the BPH's decision in Petitioner's case was an ex post
26  facto violation.  (Pet. 15-16.)

27      Petitioner further contends that the BPH's decision was
28  arbitrary because in a previous decision, the BPH had determined

7

that Petitioner would be dangerous for only two more years. Petitioner argues this violated his right to due process of law. (Pet. 5, 13-16.)

On June 10, 2010, the Orange County Superior Court denied Petitioner's habeas corpus petition, which included Petitioner's ex post facto claim.  (Pet., doc. 1-1, 51.)  The court concluded that as applied to Petitioner, Proposition 9 had not altered the definition of crimes or increased their punishment and did not alter the standards for determining parole suitability and setting a release date.  Pursuant to Cal. Pen. Code § 3041.5(d)(1) and (b((4), Petitioner could request an advanced hearing, and the BPH could advance the date of Petitioner's next parole hearing if there was a change in circumstances or new information establishing a reasonable likelihood that an extended period of imprisonment was not warranted.  Petitioner had not demonstrated that the retroactive application of a statute extending the intervals between parole consideration hearings created a significant risk of increasing his punishment.  The court concluded that Petitioner had not established a violation of due process or ex post facto principles.  (Ans., doc. 12-3, 10-11.)

The California Court of Appeal, Fourth Appellate District summarily denied Petitioner's petition for writ of habeas corpus on July 8, 2010.  (Ans., doc. 12-6, 2.)  The California Supreme Court denied a petition for review on September 22, 2010, without a statement of reasons or authority.  (Ans., doc. 12-9, 2.)

The Constitution provides, "No State shall... pass any... ex post facto Law."  U.S. Const. art I, § 10.  The Ex Post Facto

Clause prohibits any law which: 1) makes an act done before the passing of the law, which was innocent when done, criminal; 2) aggravates a crime and makes it greater than it was when it was committed; 3) changes the punishment and inflicts a greater punishment for the crime than when it was committed; or 4) alters the legal rules of evidence and requires less or different testimony to convict the defendant than was required at the time the crime was committed.  Carmell v. Texas, 529 U.S. 513, 522 (2000).

Application of a state regulation retroactively to a defendant violates the Ex Post Facto Clause if the new regulations create a "sufficient risk" of increasing the punishment for the defendant's crimes.  Himes v. Thompson, 336 F.3d 848, 854 (9th Cir. 2003) (citing Cal. Department of Corrections v. Morales, 514 U.S. 499, 509 (1995)).  When the rule or statute does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule. Garner v. Jones, 529 U.S. 244, 250, 255 (2000).

Previous amendments to Cal. Pen. Code § 3041.5, which initiated longer periods of time between parole suitability hearings, have been upheld against challenges that they violated the Ex Post Facto Clause.  See, e.g., California Department of Corrections v. Morales, 514 U.S. 499, 509 (1995) (where the great majority of prisoners were found unsuitable, a 1982 increase of the maximum period for deferring hearings to five years for

9

offenders who had committed multiple homicides only altered the
method of setting a parole release date and did not result in a
sufficient risk of increasing the punishment or measure of
punishment for the crime in the absence of modification of
punishment or of the standards for determining either the initial
date for parole eligibility or an inmate's suitability for
parole); Watson v. Estelle, 886 F.2d 1093, 1097-98 (9th Cir.
1989) (finding no ex post facto violation in applying amended
Cal. Pen. Code § 3041.5(b)(2)(A), permitting delay of suitability
hearings for several years, to prisoners sentenced to a life term
before California's Determinate Sentencing Law was implemented in
1977 who otherwise would have been entitled to periodic review of
suitability).

Similarly, a state law permitting the extension of intervals
between parole consideration hearings for all prisoners serving
life sentences from three to eight years did not violate the Ex
Post Facto Clause where expedited parole review was available
upon a change of circumstances or receipt of new information
warranting an earlier review, and where there was no showing of
increased punishment. Garner v. Jones, 529 U.S. 244, 249 (2000).
Under such circumstances, there was no significant risk of
extending a prisoner's incarceration. Id. The Court recognized
that state parole authorities retain broad discretion concerning
release and must have flexibility in formulating parole
procedures and addressing problems associated with confinement
and release. Id. at 252-53. Inherent in the discretionary
nature of a grant of parole is the need to permit changes in the
manner in which the discretion is "informed and then exercised."

10

1  Id. at 253.  Further, the timing of the hearings depended in part

2  on the parole authority's determination of the likelihood of a

3  future grant of parole; as a result, parole resources were put to

4  better use, which in turn increased the likelihood of release.

5  Id. at 254.  In Garner, the matter was remanded for further

6  proceedings to determine the risk of increased punishment.

7      In Gilman v. Schwarzenegger, - F.3d -, No. 10-15471, 2011 WL

8  198435, at *2 (9th Cir. Jan. 24, 2011), the Ninth Circuit

9  reversed a grant of injunctive relief to plaintiffs in a class

10 action seeking to prevent the board from enforcing Proposition

11 9's amendments that defer parole consideration.  The court

12 concluded that the plaintiffs were not likely to succeed on their

13 claim on the merits.  Id. at *1, *3-*8.  In Gilman, there was no

14 evidence concerning whether or not more frequent parole hearings

15 would result in more frequent grants of parole, as distinct from

16 denials.  Id. at *3.  Although the changes wrought by Proposition

17 9 were noted to be more extensive than those before the Court in

18 Morales and Garner, advanced hearings, which would remove any

19 possibility of harm, were available upon a change in

20 circumstances or new information.  Id. at *6.  In the absence of

21 facts in the record from which it might be inferred that

22 Proposition 9 created a significant risk of prolonging

23 Plaintiffs' incarceration, the plaintiffs had not established a

24 likelihood of success on the merits on the ex post facto claim.

25 Id. at *8.

26     The Court may take judicial notice of court records.  Fed.

27 R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333

28 (9th Cir. 1993); Valerio v. Boise Cascade Corp., 80 F.R.D. 626,

11

1    635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir. 1981).

2         The Court takes judicial notice of the docket and specified

3    orders in the pending class action, Gilman v. Fisher, 2:05-cv-

4    00830-LKK-GGH, including the order granting motion for class

5    certification filed on March 4, 2009 (Doc. 182, 9:7-15).  The

6    motion indicates that the Gilman class is made up of California

7    state prisoners who 1) have been sentenced to a term that

8    includes life, 2) are serving sentences that include the

9    possibility of parole, 3) are eligible for parole, and 4) have

10   been denied parole on one or more occasions.  The docket further

11   reflects that the Ninth Circuit affirmed the order certifying the

12   class.  (Docs. 257, 258.)  The Court also takes judicial notice

13   of the order of March 4, 2009, in which the court described the

14   case as including challenges to Proposition 9's amendments to

15   Cal. Pen. Code § 3041.5 based on the Ex Post Facto Clause, and a

16   request for injunctive and declaratory relief against

17   implementation of the changes.  (Doc. 182, 5-6.)

18        The relief sought by Petitioner concerns the scheduling of

19   further proceedings by the BPH and the validity of state

20   procedures used to deny parole suitability – matters removed from

21   the fact or duration of confinement.  Such types of claims have

22   been held to be cognizable under 42 U.S.C. § 1983 as claims

23   concerning conditions of confinement.  Wilkinson v. Dotson, 544

24   U.S. 74, 82 (2005).  Thus, they may fall outside the core of

25   habeas corpus relief.  See, Preiser v. Rodriquez, 411 U.S. 475,

26   485-86 (1973); Nelson v. Campbell, 541 U.S. 637, 643 (2004);

27   Muhammad v. Close, 540 U.S. 749, 750 (2004).

28        Further, Petitioner's requested relief overlaps with the

12

1   relief requested in the <u>Gilman</u> class action.  A plaintiff who is

2   a member of a class action for equitable relief from prison

3   conditions may not maintain an individual suit for equitable

4   relief concerning the same subject matter.  <u>Crawford v. Bell</u>, 599

5   F.2d 890, 891-92 (9th Cir. 1979).  It is contrary to the

6   efficient and orderly administration of justice for a court to

7   proceed with an action that would possibly conflict, or

8   interfere, with the determination of relief in another pending

9   action which is proceeding and in which the class has been

10  certified.

11      Here, Petitioner's own allegations reflect that he qualifies

12  as a member of the class in <u>Gilman</u>.  The court in <u>Gilman</u> has

13  jurisdiction over same subject matter and may grant the same

14  relief.  A court has inherent power to control its docket and the

15  disposition of its cases with economy of time and effort for both

16  the court and the parties.  <u>Landis v. North American Co.,</u> 299

17  U.S. 248, 254-255 (1936); <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1260

18  (9th Cir. 1992).  In the exercise of its inherent discretion,

19  this Court concludes that dismissal of Petitioner's ex post facto

20  claim in this action is appropriate and necessary to avoid

21  interference with the orderly administration of justice.  <u>Cf.</u>,

22  <u>Crawford v. Bell</u>, 599 F.2d 890, 892-93; <u>see</u> <u>Bryant v. Haviland</u>,

23  No. CIV S-09-CV-3462 GEB, 2011 WL 23064, *2-*5 (E.D. Cal. Jan. 4,

24  2011).

25      A petition for habeas corpus should not be dismissed without

26  leave to amend unless it appears that no tenable claim for relief

27  can be pleaded were such leave granted.  <u>Jarvis v. Nelson</u>, 440

28  F.2d 13, 14 (9th Cir. 1971).  In view of the allegations of the

1  petition and the pendency of the Gilman class action, amendment

2  of the petition with respect to the ex post facto claim would be

3  futile and unproductive.

4      Insofar as Petitioner alleges that the BPH's decision was

5  arbitrary and thus a denial of due process of law, the Court

6  notes that transcript of the proceedings demonstrates that the

7  BPH considered parole suitability criteria pursuant to state law

8  and rendered a decision supported by express reasoning concerning

9  the pertinent factors of parole suitability.  Petitioner has not

10 alleged facts demonstrating arbitrary action on the part of the

11 BPH that would entitle him to relief.

12     Accordingly, it will be recommended that the ex post facto

13 claim and due process claims be dismissed without leave to amend.

14     IV.  Certificate of Appealability

15     Unless a circuit justice or judge issues a certificate of

16 appealability, an appeal may not be taken to the Court of Appeals

17 from the final order in a habeas proceeding in which the

18 detention complained of arises out of process issued by a state

19 court.  28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537

20 U.S. 322, 336 (2003).  A certificate of appealability may issue

21 only if the applicant makes a substantial showing of the denial

22 of a constitutional right.  § 2253(c)(2).  Under this standard, a

23 petitioner must show that reasonable jurists could debate whether

24 the petition should have been resolved in a different manner or

25 that the issues presented were adequate to deserve encouragement

26 to proceed further.  Miller-El v. Cockrell, 537 U.S. at 336

27 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  A

28 certificate should issue if the Petitioner shows that jurists of

14

reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in any procedural ruling. <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong. <u>Id.</u> It is necessary for an applicant to show more than an absence of frivolity or the existence of mere good faith; however, it is not necessary for an applicant to show that the appeal will succeed. <u>Miller-El v. Cockrell</u>, 537 U.S. at 338.

A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing Section 2254 Cases.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner. Petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, it will be recommended that the Court DECLINE to issue a certificate of appealability.

V. <u>Recommendations</u>

In summary, Petitioner's due process and ex post facto claims should be dismissed without leave to amend. Therefore, it will be recommended that the petition be dismissed without leave to amend.

Accordingly, it is RECOMMENDED that:

15

1    1)   The petition be DISMISSED without leave to amend; and

2    2)   The Court DECLINE to issue a certificate of

3    appealability; and

4    3)   The Clerk be DIRECTED to close the case because

5    dismissal would terminate the action in its entirety.

6         These findings and recommendations are submitted to the

7    United States District Court Judge assigned to the case, pursuant

8    to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of

9    the Local Rules of Practice for the United States District Court,

10   Eastern District of California.  Within thirty (30) days after

11   being served with a copy, any party may file written objections

12   with the Court and serve a copy on all parties.  Such a document

13   should be captioned "Objections to Magistrate Judge's Findings

14   and Recommendations."  Replies to the objections shall be served

15   and filed within fourteen (14) days (plus three (3) days if

16   served by mail) after service of the objections.  The Court will

17   then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §

18   636 (b)(1)(C).  The parties are advised that failure to file

19   objections within the specified time may waive the right to

20   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d

21   1153 (9th Cir. 1991).

22

23   IT IS SO ORDERED.

24   Dated:   May 31, 2011            _____/s/ Sheila K. Oberto_____
                                       UNITED STATES MAGISTRATE JUDGE
25

26

27

28